'IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**GENE MILEY**                                                                                           **PLAINTIFF**

vs.                                                            CIVIL ACTION NO. 2:05cv2072-KS-MTP

**JONES COUNTY JAIL, JONES COUNTY
SHERIFF'S DEPARTMENT, SHERIFF LARRY
DYKES, INDIVIDUALLY, AND IN HIS OFFICIAL
CAPACITY AS SHERIFF OF JONES COUNTY, NURSE
MELANIE WUERTZ, INDIVIDUALLY, AND IN HER
CAPACITY AS NURSE AT THE JONES COUNTY JAIL;
BHARAT PATEL, M.D., INDIVIDUALLY, AND IN HER
OFFICIAL CAPACITY AS CONTRACT PHYSICIAN FOR
THE JONES COUNTY JAIL; JOHN DOE PERSONS 1-5 AND,
JOHN DOE ENTITIES 1-5**                                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on defendant Sheriff Larry Dykes' motion for summary judgment. The court, having reviewed the motion, and being fully advised in the premises, finds that the motion is well taken and should be granted. The court specifically finds as follows:

FACTUAL BACKGROUND

Plaintiff Gene Miley entered the defendant Jones County Jail (the "Jail") on July 3, 2003 to await trial on a charge of grand larceny. On July 20, 2003, while he was asleep in his cell, plaintiff was bitten several times on his legs and hip by spiders. The following morning when he woke up, plaintiff examined the bites and thought they looked like ant bites. Later that morning plaintiff reported the bites to an officer at the Jail, Officer Harrell. Plaintiff also completed a medical request form and provided it to Officer Harrell, indicating that he had been bitten by

1

something and he wanted to see the nurse. At that time, Jones County employed a full-time Licensed Practical Nurse, Janet Booth. Nurse Booth worked Monday through Friday from 8 a.m. to 5 p.m. and was also on-call twenty-four hours a day on the weekends. Nurse Booth reported directly to Dr. J. B. Patel, a physician under contract with Jones County to provide medical care for inmates at the Jail, with respect to medical care issues, and she reported to Sheriff Dykes with regard to administrative matters. Dr. Patel visits the Jail twice a week or more frequently, if necessary.

On July 23, plaintiff was examined by Nurse Booth in her office at the Jail. According to Nurse Booth, when she first examined plaintiff he appeared to have an in-grown hair. However, according to plaintiff, Nurse Booth told him that the bites looked like carbuncles, which she explained were a type of boil.[1] Nurse Booth then told plaintiff she would see what she could do. According to Nurse Booth, she then called Dr. Patel and told her that plaintiff said that he had been bitten by a spider, and Dr. Patel then called in a prescription to the pharmacy. Nurse Booth avers that the prescription was delivered to the Jail and she started giving plaintiff the antibiotic Cephalexin on July 23. Nurse Booth's notes from that date state that the medication arrived from the pharmacy and that antibiotics were started per the doctor's orders. However, according to plaintiff, he was not given any antibiotics.[2] Nurse Booth also treated the affected areas, which she described as "open wounds," with gauze.

In her notes dated July 25, Nurse Booth indicated that plaintiff remained on antibiotics

---

[1] Nurse Booth denies ever telling plaintiff that she thought he had a carbuncle.

[2] Nurse Booth testified at her deposition that the medication log sheet contained plaintiff's initials, indicating that he had been receiving the prescribed medication. However, this document was not provided to the court.

and that he had no complaints at that time. Nurse Booth testified that at this time she advised plaintiff not to touch or pick his wounds. In her notes dated July 27, Nurse Booth indicated that plaintiff was still on antibiotics and that the infected areas were healing. Nurse Booth avers that she was administering the antibiotics twice daily - at 8 a.m. and 4 p.m. Nurse Booth's notes from July 29 indicate that plaintiff had completed his antibiotics and that there were "[n]o further complaints at this time." Nurse Booth testified that plaintiff's wounds were healing and "looking good" and that plaintiff did not complain to her after the 29th. Again, according to plaintiff, he was not given any antibiotics.

A day or two after being examined by Nurse Booth, plaintiff was seen by Dr. Patel. Dr. Patel examined plaintiff and took a culture. According to plaintiff, Dr. Patel also said that the bites looked like carbuncles. Dr. Patel told plaintiff that he would be prescribed Keflex, an antibiotic. According to plaintiff, however, he did not receive any Keflex at this time. Plaintiff alleges that his legs continued to swell and pus began coming out of the bites and that for the next few days he continued to complain to Nurse Booth every time he would see her as well as to other Jail employees, including the Jail Administrator at the time, Captain Vanderslice. According to plaintiff, Captain Vanderslice "acted like he didn't want to do anything or...he could not do anything."

Approximately one week after he was bitten, on a Friday, plaintiff was in the shower and a piece of skin from his hip fell out. Plaintiff avers that he picked it up and brought it to Nurse Booth who told him to put pressure on it and that it would be all right. She told plaintiff she would see him the following Monday. Several days later, plaintiff avers that he began running a fever and that Sergeant Barbara Hinton gave him ice water and some Tylenol. Plaintiff avers

3

that during this time, he was repeatedly requesting medical attention from Nurse Booth as well as other employees at the Jail but was being ignored. However, Nurse Booth testified that she never refused medical treatment to plaintiff.

On August 13, Officer Wayne McClemore brought plaintiff to the multi-use room in the Jail and asked defendant Larry Dykes, the Sheriff of Jones County, to look at plaintiff's leg, because plaintiff appeared to be running a fever. After examining plaintiff, Sheriff Dykes decided that he should be brought to the emergency room. Sheriff Dykes avers that at no time did he believe plaintiff's condition was serious, as the bites did not appear serious and no person, including any medical personnel, told him that the bites were serious. He avers that prior to August 13, he had never spoken with the plaintiff about his condition and plaintiff had never asked him for medical care or complained about his medical care or lack thereof. Sheriff Dykes avers that he had seen plaintiff prior to this occasion (within a few weeks) and plaintiff said nothing to him about his medical condition. Sheriff Dykes did speak with Nurse Booth at some time before August 13 regarding plaintiff and was informed that he was seeing either Nurse Booth or Dr. Patel and that he had been prescribed antibiotics which he was taking.

Plaintiff was taken to South Central Regional Medical Center, where he was examined and underwent surgery to remove infected tissue from five wounds.[3] Upon completion of the surgery, plaintiff was left with several open wounds. Plaintiff stayed in the hospital until August 27, at which point he returned to the Jail. Subsequent to his return, plaintiff told Nurse Booth that he did not want her touching him or providing him any medical treatment. However, he did

---

[3] Specifically, plaintiff was diagnosed at the hospital with "[n]ecrotizing soft tissue infection, multiple sites, with cellulitis." Plaintiff was also told that without skin grafts (which plaintiff has not yet had because he cannot afford them) there will be permanent scarring.

allow Nurse Booth to change his bandages.

Plaintiff avers that he never received any antibiotics until after being admitted to the hospital. Plaintiff also avers that he received antibiotics (Keflex) upon his return from the hospital, although the date on the bottle predated his hospital admission.

On December 30, 2004, Plaintiff filed suit against the Jail, the Jones County Sheriff's Department, and certain John Does in the Circuit Court of Jones County, Mississippi , alleging that Jones County negligently provided him medical care. On September 23, 2005, Plaintiff amended his complaint, adding, among others, Sheriff Dykes as a defendant (in both his individual and official capacities) and adding civil rights claims under 42 U.S.C. § 1983. The defendants removed the case to this court on September 28, 2005. Sheriff Dykes filed a motion for summary judgment on May 15, 2007.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988). The moving party, however, need not negate the elements of the non-movant's case. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) *(citing Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994)).

Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to show with "'significant probative' evidence" that a genuine issue of material fact actually exists. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994) (citation omitted). To overcome summary judgment, the non-movant may not rest on the pleadings, but must identify specific evidence in the ... record demonstrating that there is a material fact issue concerning the essential elements of its case." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citation omitted); *see also Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257. "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial." *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1996) (citation omitted). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence...will be insufficient" to defeat a properly supported motion for summary judgment.). "[C]onclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass*, 79 F.3d at 1429 (citation omitted). The non-movant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that

evidence must be drawn in favor of the party opposing summary judgment. *Anderson*, 477 U.S. at 255. The district court, therefore, "must not resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) (internal citation omitted). Summary judgment is improper where the court merely believes it unlikely that the nonmovant will prevail at trial. *Nat'l Screen Serv. Corp. v. Poster Exch., Inc.*, 305 F.2d 647, 651 (5th Cir. 1962). By contrast, summary judgment for the moving party is only proper when a rational factfinder, looking at the record as a whole, could not find for the nonmoving party. *Matsushita*, 475 U.S. at 587.

"The mere existence of a disputed factual issue...does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Prof'l Mgrs., Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "With regard to 'materiality,' only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Factual disputes that are irrelevant or that are unnecessary will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987) (citation omitted). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiffs' cause of action does not exist as a matter of law,...all other contested issues of fact are rendered immaterial." *Topalian v. Ehrmanl*, 954 F.2d 1125, 1138 (5th Cir. 1992), *reh'g denied*, 961 F.2d 215 (5th Cir. 1992).

ANALYSIS

Plaintiff asserts claims against Sheriff Dykes in both his individual and official capacities, under Section 1983, for violation of his Eighth Amendment rights. Specifically, plaintiff alleges

in his Amended Complaint that the defendants failed to provide him with adequate medical care, and that Sheriff Dykes hired inadequate medical personnel and failed to properly train and supervise non-medical personnel regarding plaintiff's medical care.

<u>Individual Capacity</u>

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Accordingly, an official is not entitled to qualified immunity only where: 1) plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and 2) the official's actions violated that right to the extent that an objectively reasonable person would have known. *Id.* (citations omitted). A party seeking damages from an official asserting qualified immunity bears the burden of overcoming that defense. *Gobert*, 463 F.3d at 346 n.14 (citations omitted).

With respect to the first prong, a serious medical need "is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Id.* at 345 n.12 (citation omitted). The court will assume for the sake of argument that plaintiff's spider bites were sufficiently serious to meet this standard. With respect to the second prong, in order for plaintiff to demonstrate a violation of his Eighth Amendment rights, he must prove: 1) "objective exposure to a substantial risk of serious harm"; and 2) that defendant acted or failed to act with deliberate indifference to that risk. *Id.* at 345-46

(citations omitted).  Assuming that plaintiff was objectively exposed to a substantial risk of serious harm, for the reasons set forth below, the court finds that plaintiff cannot establish that Sheriff Dykes acted or failed to act with deliberate indifference.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004), *cert. denied*, 543 U.S. 864 (2004), (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  To successfully make out a showing of deliberate indifference, plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Davidson*, 91 Fed. Appx. at 965 (*quoting Domino*, 239 F.3d at 756).  "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2001) (citation omitted).

Moreover, Section 1983 liability cannot be premised on the doctrine of *respondeat superior*.  *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 286 (5th Cir. 2002) (*citing Doe v. Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (*en banc*)); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ( "Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.") (citations omitted)  "To state a

cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996) (*citing Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).  Thus, a supervisory prison official such as Sheriff Dykes may be held liable for a section 1983 violation only if he either was personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Belt*, 828 F.2d at 304.

     The evidence is undisputed that prior to August 13, Sheriff Dykes had no knowledge whatsoever of the seriousness of plaintiff's medical condition or that plaintiff was dissatisfied with the medical care (or alleged lack thereof) being provided to him.  His only knowledge of plaintiff's condition prior to this point was a conversation with Nurse Booth wherein he was informed that plaintiff had been seen by either Nurse Booth or Dr. Patel and had been prescribed antibiotics, which he was taking.  Nor, for that matter, can plaintiff demonstrate that Sheriff Dykes was deliberately indifferent to his serious medical needs.  Rather, as soon as Sheriff Dykes became aware of plaintiff's condition, he immediately ordered his subordinates to send plaintiff to the hospital.   Accordingly, the court finds that plaintiff has failed to show that Sheriff Dykes had any affirmative, personal participation in the alleged wrongdoing.

     Without personal participation by an official, supervisory liability under Section 1983 can exist only where the official "implement[s] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Belt*, 828 F.2d at 304 (citations omitted).  *See also Clark v. McMillin*, 932 F.Supp. 789, 790 (S.D. Miss. 1996) (in order to prevail on claim against sheriff in his individual capacity, plaintiff "must

show that he affirmatively participated in acts that resulted in the alleged constitutional deprivation, or that he implemented unconstitutional policies that causally resulted in" injury). Alternatively, a supervisory officer not personally involved in the alleged wrongdoing can be liable if he failed to train or supervise the officers involved, there is a causal connection between the alleged failure to supervise or train and the alleged violation of plaintiff's rights, and this failure to train or supervise constitutes deliberate indifference. *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001) (citations omitted).

With respect to policy, it is undisputed that at all relevant times, there was in effect a policy for health care services at the Jones County Jail (the "Health Care Policy"). The Health Care Policy provides, in pertinent part:

> An inmate will not be denied medical or dental care because of the inmate's financial condition. The Jones County Jail will provide health care comparable to that available to the citizens in the surrounding community. Medical care at the jail will be delivered under the general direction of a licensed physician... Medical support will be provided by the Administrative Assistant who is a Licensed Practical Nurse. No Corrections Officer will ever summarily or arbitrarily deny an inmate's reasonable request for medical services.

The Health Care Policy then goes on to specify the procedures to be followed by prisoners and staff regarding requests for medical assistance as well as the distribution of medication. The evidence is also undisputed that during the relevant time period, Jones County Jail had a full-time nurse on site Monday through Friday from 8 am to 5 pm and on call twenty-four hours a day on the weekends and had contracted with a licensed physician, Dr. Patel, to provide medical services

to inmates. Dr. Patel visits the Jail twice a week or more frequently, if necessary. Sheriff Dykes' stated policy to his staff is that "if someone needed medical care, they better get it. That's been my policy since I've been in office as sheriff." Sheriff Dykes testified that he tries to go to the Jail as much as he can, and that some weeks he goes every day, while some weeks he goes a few times a week, "whatever time I have to stop by there and go in and see how things are going." There is simply no evidence (nor does it appear that plaintiff is alleging) that Sheriff Dykes instituted a constitutionally deficient policy or that any such policy caused the alleged constitutional violations.

As for failure to train and supervise, plaintiff has failed to offer any evidence whatsoever to support his allegation that Sheriff Dykes failed to hire adequate medical personnel or that he failed to train or supervise non-medical personnel regarding plaintiff's medical care. Moreover, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Upshur Cty.*, 245 F.3d at 459 (citations omitted). Indeed, a plaintiff making such allegations "must generally demonstrate at least a pattern of similar violations." *Id.* (citation omitted). Moreover, the alleged inadequate training must be "obvious and obviously likely to result in a constitutional violation." *N. Richland Hills*, 245 F.3d at 381 (citation omitted). Plaintiff has utterly failed to make this showing.

Finally, plaintiff alleges that Sheriff Dykes hired inadequate medical personnel. However, this claim requires that plaintiff establish that an "adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional

rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997). Nurse Booth is a licensed nurse, and Dr. Booth is a medical doctor. Plaintiff has not put forth any evidence regarding Nurse Booth's or Dr. Patel's background that would support a claim for inadequate hiring. Nor, for that matter, has plaintiff even alleged that Sheriff Dykes hired Nurse Booth or Dr. Patel.[4]

Based on the foregoing, the court finds that plaintiff has failed to establish that Sheriff Dykes has any personal or supervisory liability for the alleged Eighth Amendment violations and finds that plaintiff has failed to meet its burden of overcoming Sheriff Dykes' defense of qualified immunity. Therefore, summary judgment on plaintiff's claims against Sheriff Dykes in his individual capacity is warranted.

Official Capacity

"For purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order to hold a local governmental entity liable under section 1983, plaintiff must prove that a policy, custom or practice of the local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *see also Grabowski v. Jackson Cty. Public Defenders Office*, 79 F.3d 478, 479 (5th Cir. 1996) ("A municipality or county can be held accountable to a pretrial detainee for a due process violation resulting from an employee's acts only if the harmful acts resulted from a policy or custom 'adopted or maintained with objective deliberate indifference to the detainee's constitutional rights.'") (citations

---

[4] At any rate, plaintiff appears to have abandoned this claim in his opposition to the motion for summary judgment.

omitted).

As discussed above, the court has found that there was no evidence that Sheriff Dykes instituted a constitutionally deficient policy or that any such policy caused the alleged constitutional violations. Accordingly, Sheriff Dykes is entitled to summary judgment on plaintiff's claims against him in his official capacity.

Claims Against Other Defendants

Plaintiff has also sued the Jones County Jail and the Jones County Sheriff's Department.[5] However, a jail is not a legal entity capable of being sued and is not a proper defendant in a Section 1983 lawsuit, as it is not a "person" within the meaning of that statute. *See*, *e.g.*, *Carlisle v. Rayburn Correctional Ctr.*, 2007 WL 550054, at * 2 (E.D. La. Feb. 16, 2007) (citations omitted); *Gautreaux v. Eunice City Jail*, 2007 WL 276194, at * 4 (W.D. La. Jan. 3, 2007). Likewise, a police department is not a legal entity capable of being sued and is not a proper defendant in a Section 1983 lawsuit. *See*, *e.g.*, *Knight v. Lee*, 2006 WL 3406741, at * 3 (E.D. La. Nov. 20, 2006) (citations omitted). Accordingly, both of these defendants must be dismissed from this lawsuit.[6]

---

[5] Although neither of these defendants have moved to dismiss, the court addresses this issue *sua sponte*, as it relates to the court's subject matter jurisdiction. *See*, *e.g.*, *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997) ("[F]ederal trial and appellate courts have the duty to examine the basis for their subject matter jurisdiction, doing so on their own motion if necessary.").

[6] The proper defendant would be Jones County, Mississippi. However, plaintiff has not amended his complaint to add Jones County as a defendant. The court notes that Jones County has appeared in this action and has filed an answer to the Amended Complaint in which it noted that it - not the Sheriff's Department or the Jail - is the proper defendant, and that it was therefore responding to plaintiff's allegations. At any rate, even assuming that Jones County is a defendant in this lawsuit, it would be dismissed, for the same reason that plaintiff's claims against Sheriff

In addition, defendants Nurse Melanie Wuertz and Bharat Patel, M.D. have never been served in this lawsuit. Therefore, they must be dismissed pursuant to Rule 4 of the Federal Rules of Civil Procedure.

Finally, the only remaining defendants are John Doe Persons 1-5 and John Doe Entities 1-5. Plaintiff has never sought leave to amend his complaint to identify these defendants. Accordingly, the court sees no reason why they should not be dismissed from this lawsuit, as well.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Sheriff Dykes' motion for summary judgment [**# 41**] is hereby granted. Plaintiff's claims against Sheriff Dykes in both his individual and official capacities are dismissed with prejudice. Sheriff Dykes' motion to dismiss [ **# 8**] is overruled as moot.

IT IS FURTHER ORDERED AND ADJUDGED that plaintiff's claims against Jones County Jail and Jones County Sheriff's Department are dismissed with prejudice and plaintiff's claims against Nurse Melanie Wuertz , Bharat Patel, M.D., John Doe Persons 1-5 and John Doe Entities 1-5 are dismissed without prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that all other pending motions, if any, are dismissed as moot.

---

Dykes in his official capacity are being dismissed: plaintiff cannot prove that any policy, custom or practice of Jones County was the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694; *see also Grabowski*, 79 F.3d at 479) ("A municipality or county can be held accountable to a pretrial detainee for a due process violation resulting from an employee's acts only if the harmful acts resulted from a policy or custom 'adopted or maintained with objective deliberate indifference to the detainee's constitutional rights.'") (citations omitted).

SO ORDERED and ADJUDGED on this, the 25th day of July, 2007.

                                                *s/Keith Starrett*
                                                UNITED STATES DISTRICT JUDGE